Nicholas A. PALMIGIANO, Appellant,

v.

Joseph BAXTER et al., Appellees.

No. 73–1088.

United States Court of Appeals,
First Circuit.

Submitted Sept. 30, 1974.

Decided Dec. 20, 1974.

Certiorari Granted June 9, 1975.

See 95 S.Ct. 2414.

---

Stephen J. Fortunato, Jr., Pawtucket, R. I., with whom McKinnon & Fortunato, Pawtucket, R. I., and Ellen Katz, Sharon, Mass., were on brief, for appellant.

Cary J. Coen, John M. Roney, Providence, R. I., Max Stern, Stern & Shapiro, Boston, Mass., and Stanley A. Bass, New York City, on brief, for Robert Flint and Michael Roberts, amici curiae.

W. Slater Allen, Jr., Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for appellee.

## ON RECONSIDERATION AFTER REMAND

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

The Supreme Court vacated the judgments of this court in Palmigiano v. Baxter, 487 F.2d 1280 (1 Cir. 1973), vacated and remanded, Baxter v. Palmigiano, 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), for reconsideration in light of its decision in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We have received memoranda of law from the parties and have reconsidered our prior decision.

We begin by recognizing that the prisoner in this case had been given a number of state-guaranteed procedural rights under the rules promulgated by the Rhode Island authorities pursuant to Morris v. Travisono, 310 F.Supp. 857 (D.R.I. 1970). See Palmigiano, supra, 487 F.2d at 1285 n. 13 (1973). What was at issue before this court were three additional rights which were claimed on constitutional grounds: the right to remain silent under circumstances where the subject matter of the disciplinary hearing was also a possible basis for criminal prosecution; the right to require the prison disciplinary board to call adverse witnesses; and the right to have retained counsel at the disciplinary hearing. Of these, we rejected the claim that the board should be required to call adverse witnesses and this holding is supported by the Court's judgment in Wolff that, so long as the fact finders state the evidence relied on and reasons for disciplinary action, prison officials must have discretion "to refuse to call witnesses that may create risk of reprisal or undermine authority." 418 U.S. at 566, 94 S.Ct. at 2980. On the other issues before us, we found constitutionally protected rights and we now reconsider those holdings.

The Court in Wolff did not address the issue of the right to remain silent under the circumstances here. Clutchette v. Procunier, 510 F.2d 613 (9th Cir. 1974), opinion on rehearing. In this case, unlike the Ninth Circuit's case in Clutchette, the inmate was specifically advised that the facts giving rise to the disciplinary hearing could also lead to state prosecution, that he should consult his lawyer, and that his silence in the disciplinary hearing would be held against him. A finding of disciplinary infraction could lead to segregation. Having reexamined our original opinion,

we reaffirm our ruling as to this particular inmate. Where an inmate is called to a disciplinary hearing under the circumstances present here, and is informed that his silence will be used against him, or indeed where his testimony is compelled, use immunity must be provided and the inmate must be so informed. Our prior directive to expunge appellant's in-prison record of findings and decisions relating to the alleged infraction and disciplinary board hearing stands.

We are impelled, however, to reconsider our prior position which we thought struck the appropriate balance between needs of the prison authorities to get to the bottom of any prison problems and protection of the inmate who may face state prosecution for the same offense. We held that the authorities could compel a prisoner to testify *, while giving— we thought—full protection to the prisoner in the form of use immunity in any future prosecution, a step which would impose "no burden upon the prison disciplinary hearing". *Palmigiano, supra,* 487 F.2d at 1289.

■ We now think that we were in error on two counts. In the first place, we too easily applied the right of an inmate to remain silent without his silence being used against him—the issue in this case—to the situation in which no adverse inference is drawn from silence but in which the inmate must choose whether or not to testify to potentially self-incriminating matters in order to rebut or explain facts presented against him at the disciplinary hearing. Clutchette v. Procunier, 497 F.2d 809, 823, 824 n. 23 (9th Cir. 1974), recently, on this issue, reaffirmed on rehearing, 510 F.2d 613 (9th Cir. 1974). Concededly, the prospect of future criminal prosecution places a prisoner before a disciplinary board in an awkward spot that could make the choice between speaking and remaining silent difficult. But, as we have subsequently held in Flint v. Mullen, 499 F.2d 100 (1st Cir. 1974), not every adverse consequence which flows from remaining silent can be characterized as an unconstitutional penalty upon the exercise of the privilege against self-incrimination.

In the second place, we now realize that allowing prison officials to coerce testimony where they wish by extending immunity has awesome implications. It cheapens the Fifth Amendment. Immunity could be given where it would be scant recompense for the consequences of coerced testimony. There is also the institutional problem. Since prison officials themselves lack the authority to grant immunity, formal judicial proceedings and a full stenographic transcript would be required. Our prior opinion did not take such considerations into account.

While reaffirming our holding as to appellant, we amend our prior opinion by withdrawing our declaration as to a general right on the part of the prison authorities to compel testimony and a general right on the part of inmates to use immunity when they come before a disciplinary board.

■ We reiterate that the Fifth Amendment privilege against self-incrimination extends to an incarcerated suspect, whether or not interrogation is intended to obtain evidence for further prosecution, Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). An inmate subjected to such interrogation is entitled to be advised of his right to remain silent, and cannot be further interrogated should he choose not to speak. His silence may not be used against him at that time or in future proceedings. Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); see Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562

---

* The treatment of Palmigiano was consistent with the rules established in *Morris, supra.* The hearing rules provide that the "inmate shall admit or deny the charges" and "the Board members may interrogate the inmate . . . . as necessary." 310 F.Supp. at 873.

(1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

■ We now alter what we said concerning the remaining issue, the right to counsel, confined to a situation where future prosecution is contemplated. Again the *Wolff* ruling does not directly apply. This particular problem is more akin to that presented in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the Court was concerned with "circumstances surrounding in-custody interrogation [which] can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators." 384 U.S. at 469–470, 86 S.Ct. at 1625. *Mathis, supra,* applied *Miranda's* reasoning to those already in prison. It follows, therefore, that the *Miranda* solution must be foremost in the minds of prison administrators. They must make it quite clear to an inmate who is under threat of criminal prosecution that while he has a due process right to speak, he is under no compulsion to do so. If the inmate chooses to remain silent, he must not be questioned further. Moreover, in cases where criminal charges are a realistic possibility, prison authorities should consider whether defense counsel, if requested, should not be let into the disciplinary proceeding, not because *Wolff* requires it in that proceeding, but because *Miranda* requires it in light of future criminal prosecution.

■ As to the necessity for providing counsel or permitting retained counsel in disciplinary proceedings where no further criminal process is anticipated, *Wolff* indicates that the only requirement is for counsel substitute where the inmate is illiterate or incapable of adequately presenting his case. 418 U.S. at 570, 94 S.Ct. 2963. The *Morris* rules provide for such counsel substitute in all disciplinary cases where the inmate has requested it. We amend our prior opinion to the extent that we found a denial of due process in refusing access to retained counsel within the disciplinary hearing, 487 F.2d at 1292. We now affirm the district court's ruling on this point.

The judgment is affirmed in part and reversed in part; the matter is remanded to the District Court for further proceedings consistent with our amended opinion.